616 F.2d 668
 80-1 USTC P 9217
 UNITED STATES of America and John R. Cassie, Jr., Special
Agent, Internal Revenue Service, Petitioner,
v.
FIRST NATIONAL STATE BANK OF NEW JERSEY, Respondent,
Perry Levey, Intervenor.
UNITED STATES of America and John R. Cassie, Jr., Special
Agent, Internal Revenue Service, Petitioner,
v.
BERKELEY FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent,
Perry Levey, Intervenor.
UNITED STATES of America and John R. Cassie, Jr., Special
Agent, Internal Revenue Service, Petitioner,
v.
HUDSON CITY SAVINGS BANK, Respondent,
Perry Levey, Intervenor.
UNITED STATES of America and John R. Cassie, Jr., Special
Agent, Internal Revenue Service, Petitioner,
v.
LIVINGSTON NATIONAL BANK, Respondent,
Perry Levey, Intervenor.
 Nos. 79-1707, 79-1708.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 9, 1980.
Decided Feb. 13, 1980.
 
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Charles E. Brookhart (Argued), William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellants in No. 79-1707 and appellees in No. 79-1708; Robert Del Tufo, U. S. Atty., Eric Chase, Asst. U. S. Atty., Newark, N. J., of counsel.
 Herbert L. Zuckerman, Zuckerman, Aronson & Horn, Newark, N. J., for appellees in No. 79-1707 and appellants in No. 79-1708.
 Before GIBBONS, ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 In these cross-appeals, we are again presented with a challenge to the enforcement of Internal Revenue Service (I.R.S.) summonses directed to third-party recordkeepers. The taxpayer-intervenor (Levey) appeals at No. 79-1708 from the district court's order which granted enforcement with respect to most of the documents requested. The Government appeals at No. 79-1707 from the district court's refusal to order production of retained copies of forms 1099 and 1087. In light of our recent opinion in United States v. Garden State National Bank, 607 F.2d 61 (3d Cir. 1979), we hold that Levey's challenge to enforcement must fail and we therefore affirm enforcement in No. 79-1708. In the Government's appeal at No. 79-1707, however, we hold that the district court erred in exempting the subpoenas for forms 1099 and 1087 from enforcement, and accordingly reverse that portion of the district court's order.
 
 I.
 
 2
 The salient facts of this case are simple and follow the familiar Garden State pattern. I.R.S. Special Agent John Cassie was investigating the tax liabilities of Perry, Vicki, Myron, and Heidi Levey, jointly referred to as "Levey." In aid of his investigation, he issued several summonses to banks,[1] under the authority of I.R.C. §§ 7602, 7604, for the production of records relevant to the years 1973 through 1976. Levey caused the summonses to be stayed under I.R.C. § 7609(b)(2), and the Government and Cassie instituted enforcement proceedings against the banks, who took no position on supporting or opposing enforcement. Levey intervened under I.R.C. § 7609(b)(1), opposing enforcement. The petitions for enforcement of all of the summonses were consolidated in the district court.
 
 
 3
 Levey answered the enforcement petition by asserting that the summonses had been issued in bad faith. The district court heard oral argument, inspected Special Agent Cassie's files in camera, and enforced the summonses, except as to the banks' retained copies of forms 1099 and 1087.[2] United States v. First National State Bank, 469 F.Supp. 612 (D.N.J. 1979). The district court refused to deny enforcement generally. Essentially it held, as it did in the Keech appeal in Garden State, see 607 F.2d at 66, that as it understood United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), no taxpayer could ever prove "institutional bad faith" as required by LaSalle. 469 F.Supp. at 616-19.[3] But the district court held that forms 1099 and 1087 were already in I.R.S.' possession and therefore could not be obtained by summons under United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254, 255, 13 L.Ed.2d 112 (1964). While acknowledging that it might be difficult for I.R.S. to retrieve these forms from its files, it held that this burden could not, and should not, be shifted to the banks. 469 F.Supp. at 615-16.
 
 
 4
 The district court determined that Levey could not appeal effectively without access to the sealed materials examined in camera, and so ordered their release to counsel on the condition that counsel not disclose them to Levey. But the district court stayed that order pending action thereon by this court, and on June 19, 1979 we refused to grant counsel access to the sealed materials.
 
 II.
 A.
 
 5
 Levey argues that the district court's conclusion that I.R.S. was not guilty of "institutional bad faith" was clearly erroneous. Levey points to three items which he claims to be indicative of "institutional bad faith" or of abandonment of a civil tax-collection purpose:
 
 
 6
 (1) the fact that the I.R.S. Deputy Commissioner wrote two letters denying a request under the Freedom of Information Act for reopening memoranda and continuation sheets on the ground that disclosure would disturb an ongoing criminal investigation;
 
 
 7
 (2) a personal attitude of one I.R.S. official that he desired that the case be referred to the Justice Department for criminal prosecution; and
 
 
 8
 (3) a refusal by I.R.S. to negotiate a compromise of the civil aspects of the case.
 
 
 9
 These items cannot either individually or collectively justify a denial of summons enforcement.
 
 
 10
 The parties stipulated that the Service has not referred this case to the Justice Department for criminal prosecution. 469 F.Supp. at 614. Levey has not challenged and our examination of the record, including the sealed transcript, does not contradict the Government's representation that the investigating agent has not yet recommended prosecution to his superiors within I.R.S. The taxpayer's burden of proof in challenging enforcement is therefore virtually insurmountable under Garden State, 607 F.2d at 70. We have concluded that the evidence in this case does not satisfy this burden of proof. Nor does it indicate that the investigating agent was acting as a conduit for the United States Attorney or that a recommendation for prosecution was being withheld to facilitate a criminal investigation, two situations cited in Garden State as circumstances where if proved, a taxpayer would succeed in a challenge to enforcement.
 
 
 11
 The Deputy Commissioner's letters are Levey's strongest evidence,[4] and they fall short of the mark. One letter reads in full as follows:
 
 
 12
 This is in response to your letter on behalf of Perry and Vicki Levey, dated April 5, 1979, in which you appealed the decision of the Newark District Director to deny access to certain documents you requested pursuant to the Freedom of Information Act (hereinafter cited as FOIA), 5 U.S.C. § 552.
 
 
 13
 We are affirming in part and reversing in part the determination of the District Director. We are enclosing a copy of a portion of the Reopening Memorandum, however the remainder is exempt from disclosure pursuant to subsections (b)(3) and (b)(7)(A) of the FOIA.
 
 
 14
 Subsection (b)(3) protects information which is:
 
 
 15
 specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.
 
 
 16
 The statute relied upon under subsection (b)(3) is I.R.C. § 6103(e)(6) which provides:Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer, if the Secretary determines that such disclosure would not seriously impair Federal tax administration.
 
 
 17
 Your clients are the subject of a current criminal investigation. A determination has been made that the disclosure of the documents you requested would seriously impair Federal tax administration.
 
 
 18
 Furthermore, subsection (b)(7)(A) of the FOIA exempts from disclosure the documents you requested. Subsection (b)(7)(A) provides an exemption from disclosure for:
 
 
 19
 investigatory records compiled for law enforcement purposes . . . to the extent that the production of such records would interfere with enforcement proceedings.
 
 
 20
 As previously stated, your clients are the subject of a current criminal investigation, therefore disclosure of these documents would reveal the direction of the investigation and result in a premature release of the government's case. Hence, disclosure of the documents not enclosed herewith would constitute an interference with enforcement proceedings.
 
 
 21
 Under the provisions of the FOIA, you are entitled to judicial review of this decision. You may file a complaint pursuant to 5 U.S.C. § 552(a)(4) in the United States District Court in the district in which the complainant resides, or has a principal place of business, or in which the agency records are located, or in the District of Columbia. The documents you requested which are not enclosed are located in the Newark Office.
 
 
 22
 App. at 80-81 (emphasis supplied). An identical letter was sent with regard to Myron and Heidi Levey. App. at 82-83. Undoubtedly, as Levey contends, the attitude of the Deputy Commissioner is indicative of the institutional posture of I.R.S., as contrasted with the views of an agent, which are irrelevant on this score, see, e. g., LaSalle, 437 U.S. at 316 n.17, 98 S.Ct. at 2367 n.17; Garden State, 607 F.2d at 68 n. 10. But these letters[5] prove no more than that there was a criminal investigation as of the time they were both written, June 27, 1979. They do not imply that there was a criminal investigation under way when the summonses were served, August 10, 1978, or when enforcement was sought, December 19, 1978. Moreover, given the organizational structure of I.R.S., civil and criminal investigations are almost always intertwined, as recognized in LaSalle, 437 U.S. at 308-11, 98 S.Ct. at 2363-64 and in Garden State, 607 F.2d at 67. Proof of a criminal investigation does not preclude the existence of a civil investigative purpose for the summons, and it is the presence of the latter which is the critical factor, and which must be negated by the taxpayer.[6]
 
 
 23
 Our examination of the sealed transcript has shed some light on the second item of evidence cited by Levey.[7] On a letter to the United States Attorney written by one official in the Newark I.R.S. office appeared a notation in the handwriting of another official: "I would hope that this case will result in prosecution." This is not, as we have indicated, a recommendation to the Justice Department for prosecution. Moreover, we hold that the attitude of such an official is not evidence of I.R.S.' institutional posture. Finally, there is nothing in the record to indicate that there was ever any information funneled to the United States Attorney; so the "conduit" exception of Garden State is inapplicable.
 
 
 24
 Levey's reliance on the third piece of evidence may be disposed of summarily. An unmistakable holding of Garden State, 607 F.2d at 66 n.7, which we reiterate today, is that whether or not I.R.S. desires to compromise civil tax liability is irrelevant to the determination of "institutional bad faith."
 
 
 25
 In sum, while we do not agree with the district court's analysis insofar as it rests upon its belief that LaSalle institutional bad faith can never be found, we conclude that the district court did not err in enforcing the summonses, since under Garden State, "institutional bad faith" could not be found on this record.[8]
 
 B.
 
 26
 The question whether the Internal Revenue Service may obtain by administrative summons the copies of forms 1099 and 1087 retained by third-party recordkeepers appears to be one of first impression. In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court held:
 
 
 27
 He (the Commissioner) must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.
 
 
 28
 Id. at 57-58, 85 S.Ct. at 255. Levey argues that on a literal reading of Powell, I.R.S. has "possession" of the information contained in forms 1099 and 1087, since it has already received copies of the forms. We disagree.
 
 
 29
 As we understand, forms 1099 and 1087 are required to be prepared by those from whom taxpayers have received nonwage income. See note 2 supra. Generally, as they reflect interest income paid by a bank to its depositors or account-holders, or investment dividends paid by corporate entities, at the end of each tax year, the source of the payments will prepare a form 1099 in three copies. Copy A is transmitted to one of ten Internal Revenue Service Centers, copy B is sent to the recipient of the income, and copy C is retained by the payer. A similar procedure is followed by nominees who distribute income; the form filed by nominees is form 1087. The information recorded on the forms, and the filing of the forms, are designed to aid in tax reporting by the taxpayer and tax verification by the Service. Neither form is filed with the taxpayer's income tax return, although the information shown on the forms is intended to be incorporated in the return.
 
 
 30
 The Government explained at oral argument before us that forms 1099 and 1087 are used for a limited investigative purpose. Forms filed for a randomly selected group of taxpayers are checked against returns filed by those taxpayers for accuracy. Incredibly, all the forms are stored by the Service without any indexing system or method of retrieval.[9] While the forms at issue may technically be deemed within the physical proprietary control of the Government, it is clear that the "information sought," Powell, 379 U.S. at 58, 85 S.Ct. at 255, is, as a practical matter, neither accessible to nor available to I.R.S. The clear purpose of Powell, as confirmed by the other three showings that must be made by the Government to justify enforcement of a summons (legitimacy of purpose, relevance, compliance with proper procedure), is a desire to prevent abuse of the administrative summons process and harassment of the taxpayer. Powell does not address the subject of protection of property rights to pieces of paper. Where resort to an administrative summons is necessary to achieve a lawful goal, i. e., to obtain information not otherwise available, there can be no legitimate charge of "harassment." Thus, Powell is no barrier to the enforcement of summonses requiring the production by banks of their copies of forms 1099 and 1087.
 
 
 31
 This conclusion is supported by other cases that have considered analogous issues. In United States v. Berkowitz, 488 F.2d 1235 (3d Cir. 1973), cert. denied, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99 (1975), this court enforced an I.R.S. summons to a tax preparer for the names and addresses of all his customers for 1971. We stated:
 
 
 32
 Even if the corporate appellant had indicated its role on every form which it had prepared, from a practical standpoint those returns would not be readily available to the government since there is no method of retrieval for the 1971 documents. To require the Internal Revenue Service to review individually the millions of forms filed in 1971 is so obviously burdensome as to make the procedure prohibitive. Furthermore, the action of the Berk Tax Service in failing to sign the return secured by pretext naturally leads to suspicion that other customers' returns are similarly deficient and would not be identifiable.
 
 
 33
 488 F.2d at 1236. In United States v. Theodore, 479 F.2d 749, 755 (4th Cir. 1973), the Fourth Circuit refused to enforce summonses directed to a tax preparer for the returns of all his clients for 1969, 1970, and 1971 because, inter alia, there was no record evidence that I.R.S. could not readily retrieve the information:
 
 
 34
 There is nothing in the record to support the conclusion that when IRS knows the name and social security number of a taxpayer, the Service cannot readily obtain his return. The obligation is upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item.
 
 
 35
 Id. (emphasis supplied). Cf. United States v. Schwartz, 469 F.2d 977, 985 (5th Cir. 1972) (where reference would have to be made to voluminous corporate records to locate information, I.R.S. could not be said to be in possession even though an I.R.S. agent had had access to inspect records).
 
 
 36
 Thus, Berkowitz, Theodore, and Schwartz support not the taxpayer, but the position taken by the Service, with which we agree. Where the Service requires the production of the name, address, or social security number of a taxpayer and not the particular return, that information must be furnished, and it is no answer to assert, as the taxpayer here has asserted, that the Service "has" this information in its files even though it is incapable of being retrieved. It is but a logical extension, well within the parameters of the rationale of these cases, to hold that this concept similarly applies to the furnishing of retained copies of forms 1099 and 1087. The clear import of these cases is that I.R.S. may obtain such information by summons unless the facts disclose that the summons is not necessary to accomplish I.R.S.' purpose and is therefore being used to harass the taxpayer.
 
 
 37
 Nor is there any merit to the district court's discourse concerning the relative economic burdens, as between the Service and the banks, of producing the documents. Powell sought to prevent harassment, not to shield banks from administrative expenditures. Moreover, and of substantial significance here, no bank in this case ever objected to retrieving the documents which they had retained or to producing them in response to the summonses. Even had there been an "economic objection," I.R.S. stood ready to supply its own personnel to perform the work, at Government cost. As the Government pointed out in its brief:
 
 
 38
 In sum, the District Court created an issue which had not been raised by the parties, decided that issue on the basis of its perceptions of the issue rather than evidence, and ignored the holding of this Court in Berkowitz, supra, in the process.
 
 
 39
 Government brief at 11 (footnote omitted).
 
 
 40
 Thus, we hold that the district court, by construing the Powell possession requirement in too literal a fashion, and without regard to the purpose intended to be served by this requirement, erred in not ordering enforcement of the retained copies of forms 1099 and 1087.
 
 III.
 
 41
 One matter remains to be clarified. Although neither party has questioned paragraph 7 of the district court's order of April 27, 1979, we cannot ignore the problems that this portion of the order, if allowed to remain in force, may create. The paragraph in question reads:
 
 
 42
 . . . Nothing in this Order is intended to bar whatever right any intervenor may have to challenge the use of any information, testimony or document obtained pursuant to this Order, or any information directly or indirectly derived therefrom, in any other case, controversy, action or proceeding of any nature whatever, regardless of the theory on which such bar may be grounded.
 
 
 43
 App. at 51-52. As we read this portion of the district court's order, it appears to us to be too sweeping. If it purports to leave open the possibility that in a later civil or criminal proceeding between the parties, the evidence obtained through the enforcement of these summonses might again be subject to attack or be suppressed on the ground that the summonses were invalid, it is indeed too broad. We noted in Garden State :
 
 
 44
 We perceive no reason to treat the question of the validity of I.R.S. summonses any differently in the present cases, simply because the summonses in question have not yet been enforced. The only difference lies in the remedy whether or not to enforce the summons, as opposed to whether or not to reverse a conviction.
 
 
 45
 607 F.2d at 69 n.11. Since the legal issue of summons validity is the same regardless of the context in which it arises, the judgment here that these particular summonses are valid will bind the parties in future litigation, even though the present judgment arises in an enforcement setting. This, in turn, leads to the conclusion that the parties will be collaterally estopped from challenging any fact necessary to our legal conclusion that the summonses are valid. Because collateral estoppel is a legal doctrine for consideration and application in the court in which any future proceedings are commenced, the district court here may not limit the collateral effect of its order. While we recognize that we ordinarily do not discuss matters not raised by the parties, here we do so in order to delineate the scope of our judgment and to forestall the possibility of additional and unnecessary proceedings.
 
 IV.
 
 46
 The district court's order of April 27, 1979 will be affirmed except insofar as it exempts from production the retained copies of forms 1099 and 1087, and except insofar as it purports to limit its own effect in any future proceeding. Thus, subject only to these modifications, we will affirm the district court's order granting enforcement in the taxpayer's appeal at No. 79-1708, and we will reverse the district court's order in the Government's appeal at No. 79-1707.
 
 
 
 [1]
 The summoned parties were First National State Bank of New Jersey, Berkeley Federal Savings and Loan Association, Hudson City Savings Bank, Livingston National Bank, Glen Ridge Savings and Loan Association, Mayflower Savings and Loan Association, United States Savings Bank, West Essex Savings and Loan, Llewellyn-Edison Savings and Loan Association, Howard Savings Bank, Orange Savings Bank, and Walter Kidde & Co., Inc. While Walter Kidde & Co., Inc. is not a bank but rather an industrial corporation, all these third-party recordkeepers will be referred to collectively as "the banks."
 
 
 [2]
 These forms, one copy of which is retained by the preparer, reflect various types of nonwage income paid to taxpayers, such as payments of interest, investment dividends, liquidation distributions, and royalties. Form 1099 is filed by the individual or institution which is the source of the payments. Form 1087 is filed by any merely nominal or record recipient of such income and records distributions from the nominee to the actual recipients of the payments
 
 
 [3]
 In Garden State, we rejected the interpretation of LaSalle on which the district court relied
 
 
 [4]
 These letters were dated June 27, 1979, and were not introduced in evidence at the trial, which ended on April 27, 1979. For reasons we have been unable to ascertain, Levey moved in the district court that the letters be certified as a supplemental record, under Fed.R.App.P. 10(e), rather than moving for relief from judgment based on newly discovered evidence, under Fed.R.Civ.P. 60(b)(2). However, as Judge Biggs, writing for this court in United States ex rel. Mulvaney v. Rush, 487 F.2d 684 (3d Cir. 1973), stated in an almost identical context:
 Rule 10(e) is apparently intended to "supplement" a record, not to supply in substance a large new record never before the District Court and never considered by it. 5 We are not a fact-finding body. We are entitled to have the judgment of the district court both as to findings of fact and conclusions of law in a case such as that at bar.
 
 
 [5]
 The purpose of the rule is to permit correction or modification of the record transmitted to the Court of Appeals so that it adequately reflects what happened in the District Court
 Id. at 687 (citations omitted from footnote). Our conclusion that the letters do not support Levey's case makes further comment on the procedural point unnecessary.
 
 
 [5]
 At oral argument, it was represented that letters such as the one quoted are standard form letters
 
 
 [6]
 In light of the text of the Deputy Commissioner's letters it is interesting to note that the District Court for the District of Columbia has recently decided that I.R.C. § 6103(e)(6), 26 U.S.C. § 6103(e)(6), which provides for disclosure of tax return information if the Treasury Secretary "determines that such disclosure would not seriously impair Federal tax administration," is an independent standard governing disclosure and not merely a statute specifically exempting disclosure under the Freedom of Information Act. Zale Corp. v. IRS, 481 F.Supp. 486 (D.D.C.1979). While this ruling enlarges the discretion of the Commissioner to deny disclosure it of course does not affect our conclusions regarding the evidentiary value of the Deputy Commissioner's letters. What Zale does do is to preclude a taxpayer from employing a Freedom of Information Act request to obtain information by an "end run" around the restrictive discovery conditions set forth in Garden State, 607 F.2d at 71
 
 
 [7]
 Levey's reference to this evidence in his appellate brief was necessarily based on the district court's oral comments at the close of the trial, which comments referred to the in camera proceeding
 
 
 [8]
 See PAAC v. Rizzo, 502 F.2d 306, 308 & n.7 (3d Cir. 1974) ("It is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground."), cert. denied, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975)
 
 
 [9]
 Because of the sheer volume of forms and the fact that some come in on paper rather than on magnetic tape, the costs of retrieval would be prohibitive. For the same reasons, they apparently are discarded after about five years. At oral argument, the Government represented that the forms that are the subjects of the summonses in this case have probably, therefore, been discarded. We do not decide whether this last fact alone would negate "possession."