UNITED STATES of America,
Petitioner,

v.

Hugh A. McGOVERN et al.,
Respondents.

Civ. A. No. 80–0560.

United States District Court,
M. D. Pennsylvania.

June 23, 1980.
As Amended June 27, 1980.

See also, D.C., 87 F.R.D. 584; D.C., 87 F.R.D. 590.

J. Andrew Smyser, Asst. U. S. Atty., Harrisburg, Pa., Robert J. Franzinger, Robert D. Nesler, Dept. of Justice, Federal Programs Branch, Civil Division, Washington, D. C., for petitioner.

Smith Barton Gephart, Harrisburg, Pa., Harry H. Voight, LeBoeuf, Lamb, Leiby & MacRae, Washington, D. C., for respondents.

MEMORANDUM AND ORDER

RAMBO, District Judge.

In May 1980, the Nuclear Regulatory Commission (NRC) proceeded with an investigation to determine whether three events bearing heavily upon the seriousness of the Three Mile Island Unit 2 (TMI–2) accident should have been reported more promptly to the NRC. These three events were: (1) the calculated radiation dose rate of 10 rem/hour in Goldsboro, Pennsylvania; (2) elevated in-core thermocouple readings; and (3) the pressure spike in the containment vessel.

Pursuant to this investigation, the NRC sought, by subpoenas issued on May 2, 1980, the testimony of six Metropolitan Edison (Met-Ed) employees, including respondents. The subpoenas were issued in accordance with 42 U.S.C. § 2201 and 10 C.F.R. § 2.720.

On May 15, 1980, respondents moved to quash the NRC subpoenas, which motion was denied by NRC. On advice of counsel, respondents refused to appear at a scheduled hearing. On June 2, 1980, NRC filed a

Rule to Show Cause against the respondents. On June 5, 1980, respondents served notice of depositions upon oral examination and request for production of documents. On June 10, 1980, the government filed a motion for a protective order. The court addresses the latter motion in this memorandum.

■ Respondents urge that discovery be permitted to enable them to assimilate information that will conclusively show the subpoenas served by the NRC are improper, that the investigation is not being made in good faith and that the NRC's investigation overlaps with that of the grand jury. Respondents have the burden to establish that the discovery they seek is appropriate by showing that the investigation by NRC is not being conducted for a lawful purpose or that the information sought is not relevant to that investigation. *United States v. Genser*, 602 F.2d 69 (3rd Cir. 1979).

Respondents argue that because a federal grand jury is considering matters concerning TMI–2 concurrently with NRC, discovery is essential to substantiate respondents' belief that the NRC investigation is improper. Respondents believe that NRC's information may be funneled to the grand jury or that NRC's investigation is for a criminal purpose.

The court in *United States v. Genser*, 595 F.2d 146, 152 (3rd Cir. 1979) established certain standards for discovery:

At a minimum, the taxpayer should be entitled to discover the identities of the investigating agents, the date the investigation began, the dates the agent or agents filed reports recommending prosecution, the date the district chief of the Intelligence Division or Criminal Investigation Division reviewed the recommendation, the date the Office of Regional Counsel referred the matter for prosecution, and the dates of all summonses issued under 26 U.S.C. § 7602. Furthermore, the taxpayer should be entitled to discover the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

Where this information or other evidence introduced by the taxpayer reveals (1) that the IRS issued summonses after the investigating agents recommended prosecution, (2) that inordinate and unexplained delays in the investigation transpired, or (3) that the investigating agents were in contact with the Department of Justice, the district court must allow the taxpayer to investigate further. In proper cases, this investigation could include the opportunity to examine the IRS agents or officials involved, or to discover documents. Such examination/discovery, however, should be carefully tailored to meet the purpose of the inquiry. On the other hand, where this information indicates that none of these three conditions are present, the district court need inquire no further.

This discovery is not as expansive as respondents request in the matter before this court. Furthermore, such discovery was permitted because of the matters of the relationship between the Internal Revenue Service and the Department of Justice where the criminal and civil elements under the law enforcement system created by Congress were inherently intertwined.

The court in *United States v. LaSalle National Bank*, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978), summarized the several requirements that emerge for the enforcement of Internal Revenue Service summons. First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution which reasonably would relate to the subject matter of the summons be undertaken. Second, the Service at all times must use the summons authority in good faith pursuit of the congressionally authorized purposes.

The NRC investigation is being conducted for a lawful purpose and the information sought is relevant to the investigation. As previously mentioned, NRC's investigation goes to the issue of possible failure of information transfer between TMI–2 operators and NRC on or about March 29, 1979. Respondents argue that this was previously

investigated by the Kemeny Commission and Rogovin Commission. NRC, however, claims that these reports contain gaps or missing information and further investigation is deemed necessary. The NRC investigation surrounds the question of this information transfer.

█ The fact that there is an on-going grand jury investigation simultaneously with the NRC investigation is not sufficient reason, in and of itself, to stop the NRC investigation. *United States v. First National State Bank of New Jersey*, 616 F.2d 668 (3rd Cir. 1980). There is no inherent intertwining of functions between the grand jury and NRC as one finds with investigations by the Internal Revenue Service and the Department of Justice.

Respondents refer to a letter from Chairman Ahearne to Congressman Udall which they urge is strong evidence that the purpose of NRC's investigation may simply be to conduct discovery for the grand jury or for political purposes. A review of the letter leads this court to believe it is only a report of the NRC to the House Committee on Interior and Insular Affairs, which committee is charged with the oversight of NRC's activities, informing them of the progress of the investigation relating to information transfer. This court finds no improper motivations being expressed in the letter.

Where an investigation is being conducted for a lawful purpose and the information sought is relevant to the investigation, to stop such investigation at the threshold of inquiry would render substantially impossible an agency's effective discharge of the duties of investigation. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 213, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946).

The respondents have not met the burden to establish that the discovery they seek is appropriate.

The motion for a protective order is granted.