UNITED STATES of America and Clifton Beale, Revenue Agent, Internal Revenue Service, Petitioners,

v.

Emmanuel LIEBMAN and Liebman & Flaster, a Professional Corporation, Respondents.

Misc. No. 83–37.

United States District Court,
D. New Jersey.

Aug. 29, 1983.

Steven Toscher, Tax Div., U.S. Dept. of Justice, Washington, D.C., for petitioners.

Richard Flaster, Joseph Small, Liebman & Flaster, P.C., Cherry Hill, N.J., for respondents.

## OPINION

GERRY, District Judge.

The Internal Revenue Service is investigating the extent to which certain clients of the law firm of Liebman & Flaster may have improperly claimed tax deductions for fees paid to the firm in connection with the acquisition of real estate partnership interests in the years 1978, 1979 and 1980.

No one disputes that the law firm did render certain services to a number of clients acquiring real estate partnership interests. But the parties to this summons proceeding disagree—and have disagreed for some time now—about the nature of those services and their proper tax treatment. The Government maintains that Liebman & Flaster (L & F) performed investment counseling or brokerage service; the fee for such services would apparently not qualify as tax deductible. L & F, on the other hand, have consistently argued that they rendered *legal* services to the clients—the fees for which services do evidently qualify as tax deductible. Apparently L & F so advised its clients.

The summons seeks records of the law firm that contain the names, addresses and social security numbers of clients who paid a fee to the firm in connection with acquiring a real estate partnership interest in 1978, 1979 or 1980.

In an *ex parte* proceeding pursuant to 26 U.S.C. § 7609(f) and 7609(h), the Court granted leave for the summons to issue.

In response to the summons, the respondent law firm refused to produce the requested records or to reveal information that might have aided the Internal Revenue Service (IRS) in identifying their clients. Consequently, the Government brought the instant motion to enforce the summons.

Originally, the IRS claimed that there may have been as many as one hundred taxpayers during each of the years under investigation who paid a fee to the firm and who claimed that fee as a tax deduction. In an affidavit submitted to the court, respondents state that 137 clients paid the fee to the firm.

The respondents move to dismiss the proceeding or to quash the summons on three grounds: (1) the IRS already has all of the requested information, or can obtain the information through its own internal files and procedures; (2) the information is not sought for a proper legal purpose in that the underlying legal issue (the deductibility of said legal fees by persons sought to be identified by the summons) is still an open issue currently docketed for litigation before the United States Tax Court; and (3) the attorney-client privilege precludes the demanded disclosure.

*Threshold Challenges to the Enforceability of the Summons.*

 Section 7609 of Title 26, United States Code, places restrictions or pre-conditions upon the enforcement of an IRS "John Doe" summons. For example, a court may not enforce a summons unless the information sought is not readily available from other sources. Concomitant with

a showing that the requested information is otherwise unavailable, petitioner IRS must generally show that the data is not already in the Government's possession. *See United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964).

The respondents argue that the IRS has the capability to retrieve the summoned information from IRS records.

Specifically, respondents contend that the IRS has already identified the eleven real estate partnerships in which L & F clients have participated during the years in question. According to L & F, the tax returns for these eleven partnerships indicate the identity of all the limited partners. The IRS could, argue the respondents, examine those limited partners' returns to discern which ones deducted legal fees in connection with the acquisition of their interests. For those taxpayers, the IRS could then demand documentation of the payment of the fee—documentation that would presumably establish whether the taxpayer paid the attorney's fee to L & F (as opposed to some other attorney).

The IRS disputes respondents' sanguine view of the Service's capabilities.

The affidavit of IRS official, William Clemente, explains:

After being served with the John Doe summons, the respondents still refused to testify under oath concerning the number of partnerships involved. The respondents now state in the affidavit of Emmanuel Liebman that there were eleven (11) real estate partnerships. Prior to that statement in the affidavit of Emmanuel Liebman, the Internal Revenue Service had no practical means of ascertaining the number of partnerships involved. Even if the Internal Revenue Service knew there were only eleven (11) partnerships, the Internal Revenue Service could not determine from its records whether it knows the names of all the partnerships involved. Some of the partnerships known to the Internal Revenue Service may be different than the eleven (11) partnerships referred to in the affidavit of Emmanuel Liebman. Unless the Service knows the names of all of the partnerships involved, and not just the number of partnerships, it could never be sure that it had ascertained the identities of all of the partnerships or the identities of all of the individual taxpayers.

Clemente's affidavit further explains the elaborate procedure IRS adopted to discover over one hundred (100) taxpayers who apparently claimed deductions for fees paid to L & F.

But that procedure—even used in light of respondents' affirmation that there are only eleven relevant real estate partnerships—has at least the shortcoming Clemente emphasizes: the inevitable uncertainty as to the identity of the specific eleven partnerships in which L & F clients reportedly acquired interests.

One well might argue that the IRS could, through redoubled efforts, increase the comprehensiveness and accuracy of its discovery of the names of the taxpayers in question. Along these lines, respondents argue that the identities of the taxpayers—or information from which the IRS can deduce their identities—are in the possession of the agency.

■ Mere physical possession by the IRS of information sought by a summons does not always prohibit enforcement of the summons. For example, a court should order enforcement when the IRS has no practical way to retrieve information lodged somewhere in its galaxy of records. *See United States v. First National State Bank of N.J.,* 616 F.2d 668, 674 (3d Cir.1980).

The statute and the *Powell* decision establish a prohibition against unnecessary summons. The clear import of *Powell* and its progeny is that IRS may resort to a summons unless the record discloses that the summons is not necessary to accomplish the IRS's purpose. According to our own Court of Appeals, *Powell* does not establish a bright line rule that mere physical possession by the IRS renders a summons unnecessary. If the facts show that IRS cannot retrieve the information, then the summons becomes "necessary." *Id.*

■ In the instant case, the IRS has made substantial independent efforts to discern from its existing records the names of the taxpayers at issue. The court is satisfied that, despite such efforts, the Service cannot practically—or with assurance of accuracy—retrieve the information it now seeks. In light of the inaccessibility of the information sought, the court holds the summons "necessary" to the accomplishment of the IRS's purpose and so not precluded by the IRS's current possession of the sought for information.

In another challenge to enforceability, respondents argue that the summons is not issued for a proper purpose. More specifically, the law firm urges that the IRS has never consistently held illegal the tax deduction of the fees at issue here. Rather, respondents contend that different parts of the agency have alternately allowed and contested the deductions.

The history of the IRS's treatment of the subject deduction does suggest institutional uncertainty and inconsistency. The Camden, New Jersey office of the IRS has tenaciously challenged the legality of the deduction; officials in the appellate office in Philadelphia, on the other hand, have apparently indicated a willingness not to challenge the deduction.

Affidavits submitted to the court demonstrate, however, the current institutional posture of the IRS: that the deductions at issue violate the tax law.

The respondents argue, in essence, that the IRS is entitled to enforcement only when it pursues a *clear* violation of the Internal Revenue statutes. With prolonged confusion in the IRS's own house over the legality of the subject deduction, the respondents assert that the deduction is not a sufficiently clear tax law violation to establish a "proper purpose" for the summons.

Acceptance of respondents' argument would likely require the IRS to prove in doubtful cases, through litigation, the illegality of a certain tax practice before a summons could be enforced for information relating to the practice. Such a prospect would engraft upon the statutory frame-work a prerequisite for enforcement that would complicate, if not frustrate, what the Congress intended to be an efficacious information gathering device. The court rejects the argument because its acceptance would impermissibly complicate and frustrate the procedure Congress ordained.

■ Moreover, the Supreme Court rejected analogous argument in its *United States v. Powell* decision. In *Powell,* the Service summoned information relating to violations beyond the limitations period. Because of the violations' vintage, only a showing of fraud would have made them actionable. Respondents maintained, therefore, that the IRS had to show probable cause to suspect *fraudulent* taxpayer conduct, in order to establish that the summons was issued for a proper purpose. The court rejected that argument, suggesting that the acceptance of the argument would add an additional layer of protection for taxpayers (and record-keepers) beyond the protections carefully crafted by Congress in the statute. *See United States v. Powell,* 379 U.S. at 56–58, 85 S.Ct. at 254–55. The requirement of a proper purpose prohibits summons issued to harass a taxpayer, or to coerce a settlement of a collateral dispute; but absent such indications of bad faith, a judicial evaluation of whether the Commissioner has properly determined the illicitness of the activity he seeks to investigate would "overshoot the goal the legislators sought to attain." *See United States v. Powell,* 379 U.S. at 56, 85 S.Ct. at 254.

■ In the instant case, the IRS is investigating whether or not certain claimed deductions for legal services fit properly within the category of expenses for tax return preparation that are deductible under § 212 of the Internal Revenue Code. Without in any way deciding the substantive tax law issue, the court at least can recognize that a *bona fide* challenge to a taxpayer claim does exist here. That is enough to legitimize the "purpose" of the summons.

*Attorney-Client Privilege.*

According to respondents, the instant summons would compel an attorney to dis-

close which of his clients may have claimed certain tax deductions which the IRS may wish to contest.

IRS's demand for revelation of the identities of clients who paid a certain fee to L & F in connection with the acquisition of real estate partnership interests effectively does ask for more than the clients' identity: it asks for the identity of all clients who paid a fee in connection with a certain kind of transaction.

The Service eschews such a broad reading of the requested information, insisting that it only seeks disclosure of the clients' identities, a fact the attorney-client privilege normally does not save from disclosure.

■ The privilege applies in IRS summons enforcement proceedings. *United States v. Euge,* 444 U.S. 707, 714, 100 S.Ct. 874, 879, 63 L.Ed.2d 141 (1979). The party asserting the privilege must establish its entitlement to the privilege's protection.

■ In general, the privilege does not bar disclosure of the identity of the client or the fact of retention. *See In re Grand Jury,* 631 F.2d 17, 19 (3d Cir.1980). To this rule, the courts recognize a narrow exception: when "the person asserting the privilege can show a strong possibility that disclosure of the fact of retention . . . would implicate the client in the very criminal activity for which legal advice was sought." *Id.*

The instant summons asks for disclosure of the identity of clients, although admittedly it asks for something more: the identity of clients *who paid a certain fee.* But any request for the identity of a person must contain certain limiting characteristics, so as to describe the individual whose identity is sought. In the cases that concern the disclosure of a client's identity, the request for identification generally contains the sort of limitation that somehow describes the person sought and, concomitantly, renders the disclosure of the identity significantly informative. The instant summons presents such a case and fits therefore within the line of cases treating with disclosure of identity.

■ The identity of a client is not privileged, unless disclosure carries with it significant information which *is* privileged. *See Baird v. Koerner,* 279 F.2d 623, 633 (9th Cir.1960).

At least in the tax field, the seminal decision regarding disclosure of a client's identity is *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). In *Baird,* an attorney "X" had a client or clients who feared that they had committed various tax violations over a number of years. Attorney "X" consulted with Koerner, an experienced tax lawyer, concerning ways in which "X's" clients could improve their legal position in the event the IRS ever investigated their liabilities. Attorney "X" did not reveal to Koerner the name of his client or clients, merely outlining the facts of the clients' situation. The IRS had no knowledge of any of the clients' potential liabilities, nor was the Service investigating the clients' returns.

As a strategy to improve the clients' position, the two attorneys decided that Koerner would transmit a payment to the IRS on behalf of an unnamed taxpayer, or taxpayers, in the amount which the client or clients believed they legally owed the Government from past tax years. Baird sent the check with a letter explaining the reason for the anonymous payment. The IRS then decided to investigate the matter to discover the identity of the taxpayer or taxpayers.

Koerner never had learned the clients' identities, but of course he knew the identity of the attorney. The IRS demanded, through a summons, that Koerner disclose the clients' attorney's name. Koerner refused, invoking the attorney-client privilege. The Court of Appeals upheld his claim of privilege, finding that disclosure of the clients' identities would reveal an admission of guilt by the clients made in the course of seeking legal advice. The disclosure of the clients' identities would have constituted disclosure of a confidential communication. *See In Re Grand Jury (Jones),* 517 F.2d 666, 673 (5th Cir.1975).

Decisions issued since *Baird* appear to focus upon the information that disclosure of the identity of a client would ultimately communicate. When disclosure of identity would reveal confidential communications, that disclosure falls within the protections of the privilege.

The IRS argues that disclosure of clients' names would *not* reveal any *confidential* communication, because the additional information, if any, effectively revealed by disclosure is information the clients have already published on their tax returns.

In filing the tax return, the client has already revealed (assuming he/she claimed the fee as deductible) that they paid a "legal" fee, and that they claimed a deduction for the amount of that fee. It may be that the clients did not specify on their returns that they paid the fee to L & F—but that appears to be the only non-revealed, arguably confidential item of information. Yet surely the Government could obtain that information from a taxpayer by requiring documentation of the declared expense.

In the delicate area of attorney-client privilege, each case must turn upon its own facts. *See Baird v. Koerner, supra,* at 632.

 Under the specific facts of this case, the court holds the identity of the clients not privileged. The court is simply unable to discern any underlying, confidential communication which vindication of the privilege claim would protect.

The decision in *Baird* suggests substantial distinctions between that case and the one presented here.

First, the attorney-client communications and advice in *Baird* occurred well after the clients filed their returns. Thus, whatever the clients stated on the returns could not have constituted a *disclosure* of the fact or content of their contacts with the attorney(s).

In the instant case, the IRS argues with some persuasiveness that the clients have rendered *non-confidential* the fact of their retention and the payment of a fee to L & F by claiming that fee as a tax deduction.

The fact of retention and the rendering of services giving rise to the fee here occurred *before* the clients filed their tax returns—*not after* the filing as in *Baird.*

Second, unlike *Baird,* in the instant case the underlying tax controversy centers upon the proper tax treatment of the fee paid to the lawyer. The *Baird* court found that the facts of its case fit squarely within the privilege, because the "name of the client was material only for the purpose of showing an acknowledgement of guilt on the part of such client *of the very offenses* on account of which the attorney was employed." *Baird v. Koerner,* 279 F.2d at 633, *quoting* 97 C.J.S. Witnesses, § 283 at 803. One cannot say the same about the disclosure of clients' names in the instant case. It would be absurd to suggest that these clients employed L & F solely to determine whether they could deduct the cost of the legal fee arising from the employment of the firm. Rather, the clients here apparently employed L & F for tax planning advice, including advice connected with the acquisition of a certain property interest. Thus, revelation of the names of the clients is not material only for showing an acknowledgment of guilt or liability on the part of the client of the "very offenses" or matters on account of which the attorney was employed—as in *Baird.* The IRS is not, apparently, investigating the taxpayer's liabilities for illegalities arising from their participation in, or tax treatment of, the real estate partnership—the matter on account of which the clients employed L & F. Rather, the IRS is probing the legality of the deduction of fees paid to L & F—a sideshow to the main event that was the genesis of the relation between the clients and L & F.

Finally, assuming for a moment that L & F was not a law firm, but was a brokerage house or an investment bank, (or any other institution that received payments from a taxpayer which the taxpayer then deducted on his tax return), the IRS could presumably issue a John Doe summons for the institution's records of that transaction. Respondents, recipients of a payment from the clients which the clients then deducted, re-

sist disclosing the names of the payers because those payers were clients of the law firm. But without a showing that disclosure would reveal a confidential communication—such as an admission of guilt as in *Baird*—the privilege simply does not apply.

The *Baird* court rhetorically asked whether the Government could "require every tax attorney to reveal the name of those clients who had consulted the attorney with respect to possible taxes payable, so that the Government could institute investigations of all such taxpayers?" The *Baird* court thought not, and this court agrees. But that is *not* the case here. Here, the Government seeks to challenge a deduction claimed for a professional fee, and it seeks documentation of the payment of that fee. In this case, the privilege does not extend so far.

On the other hand, the court recognizes the enormous delicacy of this matter and the commensurate potential for abuse whenever a Government agency wins access to an attorney's records. The summons as drawn, with its request for *records,* skirts too close to too many arguably protected areas. The court will thus require its modification, along lines that will minimize the intrusion of the Government into the respondents' files. The court will enforce the summons to the extent of requiring that L & F produce a list of names of those persons who paid them a fee in connection with the acquisition of a real estate limited partnership in the years 1978, 1979 and 1980.

The Government shall submit an appropriate order.