In the Matter of **GRAND JURY SUBPOENAS DATED OCTOBER 22, 1991, AND NOVEMBER 1, 1991.**

**UNITED STATES of America, Appellee,**

v.

**John DOE, Intervenor–Appellant.**

No. 1073, Docket 91–6305.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1992.

Decided Jan. 24, 1992.

Opinion filed March 23, 1992.

Alexandra Rebay, Asst. U.S. Atty., New York City (Roger S. Hayes, Acting U.S. Atty., S.D.N.Y., Scott A. Edelman, Daniel C. Richman, Asst. U.S. Attys., on the brief), for appellee.

Jack T. Litman, New York City (Litman, Asche, Lupkin & Gioiella, Paul, Weiss, Rif-

kind, Wharton & Garrison, on the brief), for intervenor-appellant.

Before: NEWMAN and KEARSE, Circuit Judges, and MARSHALL, Associate Justice Retired *.

KEARSE, Circuit Judge:

Intervenor-appellant, referred to as "John Doe," the president and sole shareholder of a corporation referred to in the present proceedings by the fictitious name "XYZ," appeals from an order of the United States District Court for the Southern District of New York, Milton Pollack, *Judge*, ordering Paul, Weiss, Rifkind, Wharton & Garrison ("Paul–Weiss"), a law firm representing Doe and formerly representing XYZ, to comply with a grand jury subpoena *duces tecum* calling for the production of certain XYZ records in Paul–Weiss's possession. Over objections by Doe and Paul–Weiss on grounds of Fifth Amendment, attorney-client, and attorney-work-product privileges, the district court granted the motion of the United States to compel compliance, finding that the documents were neither expressions of Doe, nor communications between attorney and client, nor the product of an attorney. On appeal, Doe pursues the above objections. This Court, by summary order dated January 24, 1992, affirmed the order compelling production, stating that this opinion would follow.

## I. BACKGROUND

The following facts are largely uncontested. In September 1991, a federal grand jury in the Southern District of New York was conducting an investigation of Doe with respect to possible violations of various federal laws, including securities statutes and money laundering statutes. In the investigation, the government learned that XYZ, Doe's wholly-owned corporation, had paid the bills for several telephone lines, including those used by Doe in certain of his homes and in his car. In October 1991, grand jury subpoenas *duces tecum* were served on Doe ("Doe subpoena") and on the custodian of XYZ's records ("XYZ subpoena"). The XYZ subpoena requested "[a]ny and all telephone records for any telephone as to which [XYZ] has paid bills, including but not limited to records for phones in [specified locations] and . . . cellular car phones, for the period 1985 to present." The Doe subpoena requested "[a]ll monthly telephone bills, or statement of accounts" for any of seven specified telephone numbers.

At the time these subpoenas were served, Paul–Weiss represented not only Doe but XYZ as well, in connection with the grand jury proceeding and with a separate investigation by the Securities and Exchange Commission. Paul–Weiss accepted service of the XYZ subpoena, but it subsequently informed the government that it would soon be withdrawing as counsel for XYZ and would thereafter represent only Doe. It also informed the government that neither Paul–Weiss nor XYZ had any original telephone records, and that Paul–Weiss would not disclose whether it had copies. Eventually, XYZ's new counsel produced certain telephone records pertaining chiefly to 1990 and 1991, stating that counsel was unaware of the existence of any other telephone records that might be deemed called for by the XYZ subpoena.

The government then served Paul–Weiss itself, as custodian, with a subpoena dated November 1, 1991 ("November subpoena") requesting production, for the period 1985–1989, of "[a]ll monthly telephone bills, or statements of accounts" for any of the seven telephone numbers specified in the Doe subpoena, and of all telephone records for any telephone as to which XYZ had paid the bills. Paul–Weiss refused to comply with the November subpoena, claiming that responsive documents, if any, were protected by, *inter alia*, (1) Doe's Fifth Amendment privilege against self-incrimination, (2) Doe's attorney-client privilege, and (3) attorney-work-product privilege. Paul–Weiss also argued that requiring the

* Honorable Thurgood Marshall, Associate Justice Retired of the Supreme Court of the United States, sitting by designation.

production of documents protected by the asserted privileges would violate Doe's right to due process.

The government moved in the district court for an order compelling Paul–Weiss to comply with the November subpoena, contending principally that the requested documents were corporate records, not records belonging to or created by Doe, and that the claimed privileges were not implicated. In opposition to the motion, Doe, represented in part by new counsel, was permitted to intervene and to submit *in camera* affidavits and documents in support of the claims of privilege.

Following a hearing at which the court heard oral argument and received evidence as to XYZ's payment, maintenance, and tax treatment of the telephone bills at issue, the government's motion was granted. The court stated, in pertinent part, as follows:

> The documents sought by the grand jury in possession of the witness subpoenaed for them are copies of records created by a telephone company for certain telephone numbers.
>
> . . . .
>
> [I]t is the Court's ruling that the items that have been tendered to the Court are not the product of any attorney; they are not a communication between an attorney and client, and as a third party's records, there is no self-incrimination therein by John Doe covered by the Fifth Amendment. They are not an expression of John Doe.
>
> The documents are not personal papers but are XYZ Corporation's records of payments made by it. John Doe is not compelled by their production to testify against himself. The documents, in the Court's judgment, were necessary to the conduct of the corporation's business and the filing of its tax returns.
>
> . . . .
>
> The telephone records contain no testimonial declarations by John Doe. They were not prepared by John Doe but by the Telephone Company.
>
> A witness has testified here that the telephone numbers mentioned in the record were listed in the name of John Doe and that, so far as he could see, the bills were addressed by the phone company to John Doe but came to the premises occupied by XYZ Corporation and John Doe, to the secretary employed by the corporation; that the bills were paid with corporate funds, and the evidence is that the bills were stored in corporate files on corporate premises. John Doe did not pay for the phone service, and there was no reimbursement by him for any noncorporate usage.
>
> . . . .
>
> The net of the whole matter, as presented to the Court, indicates to the Court very clearly that the motion to compel production of the disputed documents should be granted, and the attorney in possession of the same is directed to turn them over to the grand jury.

(Hearing Transcript, December 9, 1991, at 84–87.)

The district court stayed its order compelling production pending argument of the present appeal. This Court continued the stay until January 24, 1992, when it entered a summary order affirming the district court's order, stating that this opinion would follow.

## II. DISCUSSION

On appeal, Doe principally renews his claims that Fifth Amendment privilege, attorney-client privilege, and attorney-work-product privilege permit him to cause Paul–Weiss to refuse to produce the documents called for by the November subpoena. We conclude that the claims of privilege were properly rejected.

### A. *Fifth Amendment Privilege*

Doe contends that enforcement of the November subpoena would violate his Fifth Amendment privilege principally on the ground that the act of producing the documents would tend to incriminate him. We conclude that enforcement of the subpoena does not violate his Fifth Amendment privilege.

■ Preliminarily, we note that the Fifth Amendment in and of itself would not permit Doe to bar disclosures by Paul–Weiss of information given it by Doe. The Fifth Amendment protects a person against compelled *self*-incrimination, not against the compelled disclosure of his private information by his attorneys. *See Fisher v. United States*, 425 U.S. 391, 401–02, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976) ("compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself"); *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973) ("The Constitution explicitly prohibits compelling an accused to bear witness 'against himself'; it necessarily does not proscribe incriminating statements elicited from another."). Where, however, preexisting documents have been transferred to the attorney for the purpose of obtaining legal advice and the client claims attorney-client privilege, the attorney may refuse to produce the documents if the client, had he retained possession of them, would have had a Fifth Amendment privilege to refuse production. *Fisher v. United States*, 425 U.S. at 404–05, 96 S.Ct. at 1578. Accordingly, though prior to submitting the subpoenaed records to the court *in camera* Paul–Weiss had possession of them, we examine Doe's Fifth Amendment arguments as if Doe himself were custodian.

■ The district court found that the subpoenaed records were not Doe's personal records but rather XYZ records. Artificial entities are not protected by the Fifth Amendment's prohibition against compelled self-incrimination. *Braswell v. United States*, 487 U.S. 99, 102, 108 S.Ct. 2284, 2286, 101 L.Ed.2d 98 (1988); *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974); *Hale v. Henkel*, 201 U.S. 43, 74–75, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906). A corporation thus may not claim the privilege for the contents of its subpoenaed corporate records. *See, e.g., Braswell v. United States*, 487 U.S. at 102, 108 S.Ct. at 2286; *United States v. Doe*, 465 U.S. 605, 612 & n. 10, 104 S.Ct. 1237, 1242 & n. 10, 79 L.Ed.2d 552 (1984); *Hale v. Henkel*, 201 U.S. at 74–75, 26 S.Ct. at 379. Moreover, the custodian of corporate records is not entitled to refuse to produce those records on the ground that their contents may incriminate him personally, because they are not his personal records, and hence any incrimination would not be self-incrimination. *Bellis v. United States*, 417 U.S. at 89–92, 94 S.Ct. at 2183–85; *see also Fisher v. United States*, 425 U.S. at 411–12, 96 S.Ct. at 1581; *Wilson v. United States*, 221 U.S. 361, 384–85, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911). This is so whether the subpoena for the corporate records is addressed to the corporation, *see, e.g., id.,* or to the custodian, *see, e.g., Bellis v. United States*, 417 U.S. at 85, 94 S.Ct. at 2179 ("an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally"); *Dreier v. United States*, 221 U.S. 394, 400, 31 S.Ct. 550, 550, 55 L.Ed. 784 (1911). Accordingly, Doe as custodian of XYZ's records is not entitled to prevent compliance with a subpoena calling for those records on the ground that the contents of those records would tend to incriminate him.

■ Further, the custodian of corporate records has no Fifth Amendment privilege to refuse to produce those records on the ground that the act of production itself would tend to incriminate him, because "the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Braswell v. United States*, 487 U.S. at 110, 108 S.Ct. at 2291; *see also id.* at 104, 108 S.Ct. at 2288 (custodian has no such privilege even if he is the corporation's sole stockholder); *Bellis v. United States*, 417 U.S. at 100, 94 S.Ct. at 2189 ("no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be"). The policy reason for this

limitation on the custodian's claim of privilege is that

> recognizing a Fifth Amendment privilege on behalf of the records custodians of collective entities would have a detrimental impact on the Government's efforts to prosecute "white-collar crime," one of the most serious problems confronting law enforcement authorities. "The greater portion of evidence of wrongdoing by an organization or its representatives is usually found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible."

*Braswell v. United States,* 487 U.S. at 115, 108 S.Ct. at 2294 (footnote omitted) (quoting *United States v. White,* 322 U.S. 694, 700, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944)). Recognition of a privilege on the part of the custodian would impede investigation of both the corporation and the agents through whom it acts:

> If custodians could assert a privilege, authorities would be stymied not only in their enforcement efforts against those individuals but also in their prosecutions of organizations. In *Bellis,* the Court observed: "In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations."

*Braswell v. United States,* 487 U.S. at 115–16, 108 S.Ct. at 2294 (quoting *Bellis v. United States,* 417 U.S. at 90, 94 S.Ct. at 2184).

■ The fact that the custodian is not entitled to refuse to produce the documents does not, however, mean that his act of production may be used against him:

> Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual. Therefore, the Government ... may make no evidentiary use of the "individual act" against the individual. For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian.

*Braswell v. United States,* 487 U.S. at 118, 108 S.Ct. at 2295. Thus, though the jury would be free to draw inferences as to, *e.g.,* knowledge on the part of a given individual on the basis of his position in the corporation or his interest, it would not be able to draw inferences from his role as custodian or his act of production. *Id.* ("Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case.").

■ Doe argues, however, that the above principles do not apply to him because, he contends, the subpoenaed documents are not in fact XYZ corporate records but his own records, either because they pertain to his personal telephone lines, or because he obtained copies of the records from XYZ's files or from the telephone company for his own personal use. For several reasons, we disagree.

First, the assertion that the original records belonged to Doe because they pertained to his personal telephone lines is superficial. Though lines may have been listed in his name, there was evidence that XYZ paid all of the bills, that Doe did not reimburse XYZ for any of these payments, that XYZ deducted the payments on its income tax returns, and that the telephone company bills and statements had been stored in corporate files on corporate premises. The district court found that the documents were in fact XYZ corporate records. That finding is amply supported and is not clearly erroneous.

■ Second, we reject Doe's assertion that he owns the subpoenaed records simply because all that remain in existence are copies. Copies of corporate records do not become the personal property of an individual merely because he has caused the copies to be made. *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 986 (2d Cir.1983) (*"Saxon"*). In *Saxon*, we noted that the "witness ha[d] no right to appropriate to himself corporate documents, whether originals or copies." *Id.* We rejected the proposition that copies of former corporate records made by a former officer "ha[d] somehow become his personal papers" as "border[ing] on the frivolous." *Id.* Allowing a corporate officer to obtain copies of corporate records and secure for them greater protection than could be enjoyed for the originals would create a rule ripe for abuse.

■ Further, even construing the copies of the telephone company records as papers belonging to Doe, compelled production of those papers would not violate Doe's privilege against self-incrimination because "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Fisher v. United States*, 425 U.S. at 408, 96 S.Ct. at 1579 (emphasis in original). Where the documents called for "were not prepared by" the person subpoenaed and "contain no testimonial declarations by him," a subpoena *duces tecum* does not compel self-incrimination, for it "does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.* at 409, 96 S.Ct. at 1580.

■ Finally, the act of producing copies of the telephone company statements and bills would not cause Doe to incriminate himself. Where the government is not relying on the possessor's

"truthtelling" ... to prove the existence of or his access to the documents[, and t]he existence and location of the papers

are a foregone conclusion[,] the [possessor] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons "no constitutional rights are touched. The question is not of testimony but of surrender."

*Id.* at 411, 96 S.Ct. at 1581 (quoting *In re Harris*, 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 732 (1911)).

Here the November subpoena calls for records the originals of which presumably were prepared and sent by the telephone company in the ordinary course of its business. There is no dispute that the statements were received or that the bills were paid by XYZ. The mere fact that Doe has or produces the copies he has caused to be made will not constitute testimonial self-incrimination.

We conclude that the district court correctly ruled that Doe's Fifth Amendment privilege does not entitle him to prevent Paul–Weiss from complying with the November subpoena.

### B. *Attorney–Client Privilege*

■ Nor do we find merit in Doe's contention that Paul–Weiss may refuse to produce the subpoenaed documents on the ground of attorney-client privilege. That privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance," *Fisher v. United States*, 425 U.S. at 403, 96 S.Ct. at 1577, but it "attaches not to the information but to the communication of the information," *United States v. Cunningham*, 672 F.2d 1064, 1073 n. 8 (2d Cir.1982). Documents created by and received from an unrelated third party and given by the client to his attorney in the course of seeking legal advice do not thereby become privileged. *See Fisher v. United States*, 425 U.S. at 403–04, 96 S.Ct. at 1577 ("pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal ad-

vice"); *see also Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ("the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness").

■ The November subpoena calls for documents created by the telephone company. Those documents, though transmitted to Paul–Weiss, are not the client's confidential communications, are not within the privilege, and did not become exempt from discovery by that transmission.

## C. Attorney–Work–Product Privilege

■ The more interesting question is whether enforcement of the subpoena would violate the privilege protecting an attorney's work product, as distinct from the attorney-client privilege, *see United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975); *Hickman v. Taylor*, 329 U.S. at 508, 67 S.Ct. at 392. The work-product privilege protects "work product of the lawyer" by prohibiting "unwarranted inquiries into the files and the mental impressions of an attorney," *id.* at 510–11, 67 S.Ct. at 393, whether in civil litigation, *see id.*, or in criminal litigation, *United States v. Nobles*, 422 U.S. at 238 & n. 12, 95 S.Ct. at 2170 & n. 12. This privilege is not absolute, but disclosure of protected material will be compelled only in restricted circumstances. In a civil case, materials prepared by a party's attorney in anticipation of litigation or for trial are not discoverable except on a showing that the party seeking production has "substantial need" for the materials for preparation of its case and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R.Civ.P. 26(b)(3); *see also id.* (in ordering discovery, court is to protect against disclosure of attorney's mental impressions, conclusions, opinions, or legal theories). In a criminal case, except for scientific or medical reports, documents made by a defendant's attorneys or their agents in connection with the case are not discoverable. Fed.R.Crim.P. 16(b)(2).

■ The attorney-work-product doctrine generally does not shield from discovery documents that were not prepared by the attorneys themselves, `or their agents, in the course of or in anticipation of litigation. *See, e.g., United States v. Nobles*, 422 U.S. at 238–39 & n. 13, 95 S.Ct. at 2170 & n. 13. However, where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected. *See Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676 (2d Cir.1987); *Sporck v. Peil*, 759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). In *Sporck*, pursuant to the plaintiff's document demands, the defendants had made available hundreds of thousands of documents, of which the plaintiff's attorney selected more than 100,000 for copying. In preparation for the deposition of one of the defendants, the defense attorney culled a folderful of documents for review. At the deposition, the plaintiff's attorney began by asking the defendant which documents he had reviewed in preparation for his deposition. The defendant refused to answer on the ground that the selection of documents from among the larger number already furnished to the plaintiff constituted defendants' attorney's work product. Though none of the reviewed documents themselves constituted attorney work product, the *Sporck* court agreed. Noting that the plaintiff had made no claim that any documents had been withheld from production, and construing the inquiry as designed simply to gain information as to what documents defendants' attorney believed were most relevant, the *Sporck* court upheld the assertion of work-product privilege, noting that " '[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case.' " *Id.* at 316 (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982)).

In *Gould*, this Court accepted the *Sporck* principle but characterized it as

creating only a "narrow exception" to the principle that documents do not acquire protection simply by being transferred by client to attorney. *See Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d at 680. We stated that the applicability of such an exception "depends upon the existence of a real, rather than speculative, concern that the thought processes of [the client's] counsel in relation to pending or anticipated litigation would be exposed." *Id.* We further noted that "the equities might not favor the application of the *Sporck* exception if the files from which documents had been culled by [counsel] were not otherwise available to [the party seeking them] or were beyond reasonable access to [that party]." *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d at 680.

■ Our review of the sealed record in the present case persuades us that circumstances calling for application of the *Sporck*-type exception are not present. The government's document demand is not designed to glean what telephone calls Paul–Weiss deems relevant; the demand is for all telephone company records for the targeted phone lines for a five year period. And with the advent of inexpensive photocopying, it seems likely that most sets of copied documents maintained by law firms will be sufficiently voluminous to minimize disclosure of the attorney's identification of some occasional wheat among the chaff. Further, XYZ has not produced most of the subpoenaed documents and has represented that it no longer has these records; and counsel for Doe has conceded that many of the telephone records for the period covered by the November subpoena are likely no longer maintained by the telephone company. Absent production by Paul–Weiss, it appears that most of the records would not be available to the government. We conclude that the circumstances justify the district court's rejection of the claim of attorney-work-product privilege in the present case.

## CONCLUSION

We have considered all of Doe's arguments on this appeal and have found in them no basis for reversal. The district court's order compelling production of the subpoenaed documents is affirmed.