UNITED STATES of America, Petitioner,

v.

Roy MOSELEY, Custodian of Records and Moseley Construction, Inc., Respondent.

No. 93–MC–19L.

United States District Court, W.D. New York.

July 15, 1993.

Brian M. McCarthy, Asst. U.S. Atty., Steven E. Cole, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Arnold R. Petralia, Petralia, Webb & O'Connell, P.C., Rochester, NY, for respondents.

## AMENDED DECISION AND ORDER

LARIMER, District Judge.

This is a proceeding brought pursuant to Internal Revenue Code §§ 7402(b) and 7604(a) to enforce an Internal Revenue Service ("the IRS") summons. The summons was issued on October 7, 1992 as part of a joint investigation by both the Examination Division and Criminal Investigation Division of the IRS. The purpose of this investigation was to determine the correctness of respondent, Roy Moseley's ("Moseley") individual income tax returns for the years 1987–1989.

The summons directed Moseley, as custodian of records ("custodian") for Moseley Construction, Inc. ("MCI"), to appear and produce for examination the books, records and other papers of MCI at the IRS offices in Rochester, New York. Moseley refused to comply with the summons and this petition followed.

For the reasons that follow, the petition for enforcement of the summons is granted. It will be enforced, however, only as to those original documents copies of which are not currently in the possession of the IRS in a complete and legible state.

### DISCUSSION

Moseley has refused to comply with the IRS summons for three reasons: 1) as the sole owner, officer, director and employee of MCI, he argues that compliance with the summons would violate his individual Fifth Amendment right against self-incrimination; 2) he maintains that the IRS already has in its possession the information sought; and 3) he contends that the summons is vague and overbroad.

### A) Act of Production and Fifth Amendment Privilege

Moseley maintains that he is entitled to resist the IRS summons on the grounds that his act of production will be personally incriminating. He contends that the corporate documents sought by the IRS, to the extent that they exist, might provide evidence of a tax violation against him personally. According to Moseley, such forced disclosure violates his Fifth Amendment privilege.

Moseley's claim that he has a Fifth Amendment privilege which excuses MCI from producing the requested corporate documents is without merit. It is well established that corporations do not have a Fifth Amendment privilege. *Hale v. Henkel*, 201 U.S. 43, 74–75, 26 S.Ct. 370, 378–79, 50 L.Ed. 652 (1906); *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974); *Braswell v. United States*, 487 U.S. 99, 107, 108 S.Ct. 2284, 2289–90, 101 L.Ed.2d 98 (1988).

■ Since a corporation can only act through its agents, it follows that a corporate agent, when acting in that capacity, cannot refuse to comply with an IRS summons based on his own perceived Fifth Amendment privilege. "Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which possesses no such privilege." *Braswell*, 487 U.S. at 110, 108 S.Ct. at 2291. The agent's act of production is, therefore, deemed to be an act of the corporation and not a personal act of the individual.

■ Moseley concedes these general principles but claims that as the sole owner, director, officer and employee of MCI, his claim is unique and fits within what he believes to be an "exception" to these general rules. Moseley claims that footnote 11 of the *Braswell* decision creates this "exception." In *Braswell*, the Supreme Court explicitly left open the question "whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing … that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." *Braswell*, 487 U.S. at 118, n. 11, 108 S.Ct. at 2295, n. 11.

For several reasons, I believe Moseley's contentions are without merit. First of all, Moseley reads the Supreme Court's decision in *Braswell* too broadly. The Supreme Court did not create the exception relied upon here by Moseley. In fact, the Supreme Court explicitly held that the Fifth Amend-

ment is never implicated when the custodian is compelled to produce corporate records "regardless of how small the corporation may be." *Id.* at 108, 108 S.Ct. at 2290.

In my view, the issue suggested by *Braswell* in footnote 11 was rejected by the Second Circuit in the case of *In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991,* 959 F.2d 1158 (2d Cir.1992). In that case, the Second Circuit considered facts almost identical to the facts here, that is, the recipient of the subpoena duces tecum for corporate records (Doe) was the president and sole stockholder of the target corporation. In part, Doe declined to comply with the subpoena of corporate records because he claimed that the act of production would incriminate him as president and sole stockholder. Relying on the Supreme Court's decisions in *Braswell* and *Bellis,* the Second Circuit rejected the argument. The Second Circuit cited *Braswell* for the proposition that the custodian has no privilege even if he is the corporation's sole stockholder and cited *Bellis* for the proposition that the custodian cannot claim the privilege regardless of how small a corporation may be.

The Second Circuit did not discuss directly footnote 11 in *Braswell,* but it seems clear that the court rejected the argument that Moseley makes here based on that footnote.

The Second Circuit stated that the custodian has no privilege because he is not acting in a personal capacity but a representative one. Because of this, his act of production cannot be used against him directly. *In re Grand Jury Subpoenas,* 959 F.2d at 1164 (citing *Braswell,* 487 U.S. at 118, 108 S.Ct. at 2295). But, the Second Circuit noted that the jury *could* draw permissible inferences of knowledge based on "[an individual's] position in the corporation." However, the jury could not draw any adverse inferences "from his role as custodian or his act of production." *Id.*

In my view, this decision by the Second Circuit closes any possible window of privilege left open by footnote 11 in *Braswell.*

The Fourth Circuit recently has also rejected the argument made here by Moseley. In *United States v. Stone,* 976 F.2d 909

(1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1843, 123 L.Ed.2d 467 (1993) the court was faced with the precise issue raised by Moseley here and the court did explicitly discuss *Braswell's* footnote 11.

In *Stone,* the taxpayer was the sole shareholder, director, officer and employee of a corporation which was issued a subpoena duces tecum by the Department of Energy. The taxpayer declined to comply with the subpoena on the ground that the corporation's documents were personally incriminating and therefore privileged under the Fifth Amendment. He argued that his status as sole shareholder, officer, director and employee excused him, because of his privilege, from producing the subpoenaed corporate documents.

The Fourth Circuit acknowledged that *Braswell* left open the question of whether there existed an exception from the general rule of production for custodians who were the sole employee and officer of a corporation. The court held that no such exception existed and that the district court properly rejected the claimed Fifth Amendment privilege. The taxpayer's decision to operate as a corporation rather than as a sole proprietor was crucial to the Fourth Circuit. "[Respondent] chose the corporate form and gained its attendant benefits ... he cannot now disregard the corporate form to shield his business records from production." *Stone,* 976 F.2d at 912.

I agree with the Fourth Circuit's reasoning in *Stone.* Allowing Moseley to successfully resist the IRS summons based solely on his status as sole owner, director, officer and employee of MCI would be tantamount to allowing Moseley to conduct business in the corporate form only when it was advantageous to do so. As custodian of MCI, Moseley is being summoned to perform a corporate act. If he is allowed to assert a privilege, "authorities would be stymied not only in their enforcement efforts against [him] but also in their prosecutions of organizations." *In re Grand Jury Subpoenas,* 959 F.2d at 1164.

Since Moseley cannot avail himself of the Fifth Amendment privilege, because he is the custodian of MCI and MCI is being sum-

**60**

moned to produce corporate records, there is no need to go into a discussion of the possible incriminating nature of the documents sought. Moseley must comply with the IRS summons and produce the corporate records of MCI in a manner consistent with this decision.

### B) Information Sought Already in IRS Possession

■ Moseley next argues that the IRS already has in its possession the information sought in the October 7, 1992 summons. According to Moseley, at some point in 1989, the IRS commenced the tax investigation of Moseley and MCI. During those years, the IRS made document information requests of Moseley and MCI for documents pertaining to the period January 31, 1986 through January 31, 1991.

Pursuant to those requests, Moseley delivered corporate documents to an agent of the IRS, with the last delivery being on or about December 2, 1991. In addition, the IRS served a summons on the accountant for both Moseley and MCI requesting documents for the period January 1, 1986 through January 31, 1991.

According to Moseley, the IRS retained the documents turned over by Moseley, MCI and the accountant until a request for their return was made by Moseley's attorney on September 25, 1992. On October 2, 1992 and October 7, 1992, Moseley's attorney traveled to the IRS offices in Rochester, New York where the original documents were turned over to him. At that time, Moseley's attorney was advised that copies of these documents were kept by the IRS.

■ To enforce an IRS summons, the IRS must make a *prima facie* showing of "good faith," which includes a showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] ... possession, and that the administrative steps required by the Code have been followed..." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

■ Once the IRS's *prima facie* showing has been met, the burden of showing why enforcement of the summons should not proceed rests with the party summoned. *United States v. White*, 853 F.2d 107, 111 (2d Cir.1988), *cert. granted*, 489 U.S. 1051, 109 S.Ct. 1309, 103 L.Ed.2d 578 *cert. dismissed*, 493 U.S. 5, 110 S.Ct. 273, 107 L.Ed.2d 6 (1989). The IRS's burden is minimal and its *prima facie* case for enforcement can be established by the declarations of an IRS agent submitted in support of the Government's position. *United States v. Saunders*, 951 F.2d 1065, 1067 (9th Cir.1991); *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1092 (2d Cir.1988).

A declaration of Agent Thomas J. Michalski, the special agent in charge of the investigation, was submitted with the IRS's petition to enforce the summons. In his declaration, Agent Michalski does not state that documents had been produced by Moseley prior to the issuance of the October 7, 1992 summons and specifically states that "[t]he books, papers, records, or other data sought by the summons are not already in the possession of the [IRS]." (Michalski Declaration ¶ 11).

A Supplemental Declaration of Agent Michalski was submitted in support of the Government's position at a hearing held before the Court on April 15, 1993. In this declaration, Agent Michalski conceded that certain documents were produced by Moseley prior to the issuance of the October 7, 1992 summons and that the original documents have been returned to Moseley's attorney. (Supplemental Declaration ¶ 2). Agent Michalski also states that he attempted to microfilm or photocopy all of these documents, but that many of the reproductions are incomplete or illegible and, therefore, it is necessary to obtain again the originals of all the documents previously produced. (Supplemental Declaration ¶ 2). Agent Michalski does not state which documents need to be re-copied or why those documents which were successfully copied and still in the possession of the IRS, are insufficient to allow the IRS to continue its investigation.

Moseley contends that the IRS has failed to make a *prima facie* showing of good faith because the documents being sought in the October 7, 1992 summons are the same documents which he turned over and which were copied by the IRS. Moseley claims that the IRS already has in its possession the information it is seeking.

The IRS position now is that, although some documents were voluntarily produced, it does not believe that all of MCI's records were turned over. The IRS also contends that it is entitled to receive all of the original documents again, even if it once had some of them incident to Moseley's voluntary production prior to the October 7, 1992 summons.

 "[T]he 'already possessed' principle enunciated by *Powell* ... [is] a gloss on § 7605(b)'s prohibition of 'unnecessary' summonses, rather than an absolute prohibition against the enforcement of any summons to the extent that it requests the production of information already in the possession of the IRS." *United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). It is to be narrowly construed. For example, documents which are in the physical possession of the IRS but "incapable of practical retrieval" are deemed to not be "already possessed" for purposes of the *Powell* test. *United States v. Linsteadt*, 724 F.2d 480, 483–84 (5th Cir.1984).

In *United States v. First Nat'l Bank of N.J.*, 616 F.2d 668, 673–74 (3d Cir.), *cert. denied sub nom., Levey v. United States*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), the taxpayer refused to comply with an IRS request to produce retained copies of forms 1099 and 1087.[1] The taxpayer argued that copies of these forms had been sent to the IRS Centers by the individuals preparing the form. The Third Circuit held, that since these forms were stored by the IRS without an indexing system or method of retrieval, as a practical matter, they were neither accessible nor available to the IRS. *Id.* at 673–74. *But see United States v. Theodore*, 479 F.2d 749, 755 (4th Cir.1973) (the Fourth Circuit refused to enforce an IRS summons because nothing in the record supported the conclusion that the IRS could not readily retrieve the information from its files).

It is well established that the IRS is entitled to receive original documents in response to a summons. *United States v. Davey*, 543 F.2d 996, 1001 (2d Cir.1976). *Davey* does not, however, address the issue whether the IRS has the right to obtain original documents *a second time*, after it returned the originals to the taxpayer.

In this action, the IRS received original documents from Moseley, thereby satisfying the requirement of *Davey*. It then chose to copy their original documents and return them to the taxpayer.[2] Since the IRS made the copies of the documents themselves, there can be no question that the copies were true duplicates of the original documents received from Moseley.

The IRS has not cited one case where the IRS received original documents from a taxpayer, chose to copy those documents, returned the originals, and then asked for the same original documents again from the same taxpayer.

Cases cited by the IRS for the proposition that a summons can be enforced as long as the bulk of the materials is not demonstrably in the possession of the IRS deal with document requests made to third parties and the taxpayer's refusal to produce documents which the IRS received from other sources. *See United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (IRS denied that it already possessed the information and taxpayer maintained that IRS received the information from a local bank). This is clearly not the case here. The IRS concedes that it possesses some of the documents, *see* Supplemental Declaration ¶ 2, and that these

---

1. Forms 1099 and 1087 are required to be prepared by those from whom taxpayers receive nonwage income. *First Nat'l State Bank of N.J.*, 616 F.2d at 673.

2. Whether or not the IRS had an obligation to return these documents and retain a copy for its use in its investigation, is an issue that is not before this Court. Having chosen to take this path, however, the IRS must abide by its consequences.

documents were obtained from the taxpayer through voluntary production. I can see no purpose in requiring Moseley to produce documents which the IRS already has in its possession.

It is quite a different matter, however, if the IRS is maintaining that they have copies of documents which are illegible due to a copying problem. Such a mishap is not unusual and if that is the case, those documents would not be readily accessible to the IRS and should not prohibit the IRS from reexamining the documents in question.

In this case, the IRS does not maintain that the documents which it has in its possession, in a complete and legible manner, are inaccessible. Agent Michalski's reason for requesting all of the original documents produced is that some copies are incomplete and illegible. While this provides a reason for the production of certain documents, it does not provide a reason for the production of *all* of the documents.

Therefore, because the IRS admits that it retained copies of documents previously produced, and because it is unclear which documents the IRS possesses, it is necessary to limit enforcement of this petition. The IRS must provide Moseley with a list of those documents that it possesses in a complete and legible state and which it obtained from him through prior voluntary production. Moseley must then fully comply with the summons, except that it need not produce those documents which appear on the IRS's list.[3]

## C) Summons Vague and Overbroad

■ Finally, Moseley maintains that the IRS summons is vague and overbroad in that it requests "general correspondence and administrative files." According to Moseley, it is impossible to determine which items of general correspondence and items in the administrative files are relevant to the IRS examination.

26 U.S.C. § 7602(a)(1) authorizes the Secretary of the Treasury to summon and "ex- amine any books, papers, records, or other data which may be relevant or material" to a particular tax inquiry. "The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984) (emphasis in original).

■ An IRS summons is overbroad if "it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir.1993) (quoting *United States v. Wyatt*, 637 F.2d 293, 392 n. 16 (5th Cir.1981)). Generally, in order to avoid being overbroad the summons must identify: (1) the object of the investigation; (2) the records sought; and (3) the time period from which the documents are to be drawn. *See id.; Linsteadt*, 724 F.2d at 483.

The IRS summons states:

> You are hereby summoned and required to appear before Special Agent Thomas Michalski, an officer of the [IRS], to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above [Roy C. Moseley] for the periods shown.

Attached to the summons is a separate document which lists nine separate categories of documents and requires the production of:

> Any and all books, records, documents, and other items as set forth below for [MCI] for the period January 1, 1980 through and including January 31, 1991 . . .

---

3. Agent Michalski, in his Supplemental Declaration, states that certain documents relating to the time period January 1, 1980 through January 31, 1986 were not produced pursuant to the initial document requests. If these documents exist, are not on IRS's list and are in the possession of MCI, they must be produced in order to be in full compliance with the summons.

Only if the summons forces Moseley to determine whether the documents are relevant to the investigation and does not describe the documents summoned with reasonable certainty, can it be deemed to be overbroad and unenforceable. *See United States v. Lewis*, 604 F.Supp. 1169, 1172 (E.D.La. 1985) (holding summons overbroad which asked for "all information which would be necessary to enable a representative of the [IRS] . . . to properly determine total income earned . . ."). The mere fact that the IRS summons requests general correspondence and administrative files does not make it vague and overbroad as long as the request is limited to documents relating to the tax liability of Moseley. *Linsteadt*, 724 F.2d at 483.

The IRS request identifies Roy C. Moseley as the object of the investigation, the specific records sought, and it is properly limited to data relating to the tax liability of Moseley for a specified time period. Moseley is not being asked to determine the relevancy of the documents to be produced, as in *Lewis*, supra. Instead, Moseley as custodian of MCI, is being asked to produce documents relating to him over a specified time.

Since the summons is properly limited and describes the documents to be produced with reasonable certainty, the summons is not vague and overbroad.

### CONCLUSION

The petition to enforce the IRS summons is granted. Its scope is limited, however, to those documents which were obtained from the respondent and which are not presently in the possession of the IRS in a complete and legible state.

Respondent shall produce all such documents no later than July 22, 1993, at the offices of the Internal Revenue Service, 100 State Street, Room 2240, Rochester, New York.

IT IS SO ORDERED.