See also 467 F.Supp.2d 394.

**ANTIDOTE INTERNATIONAL FILMS, INC. a New York corporation, Plaintiff,**

v.

**BLOOMSBURY PUBLISHING, PLC, a corporation, Underdogs, Inc., a corporation, Laura Albert, a/k/a J.T. LeRoy, an individual, and Judi Farkas, an individual, Defendants.**

**No. 06 Civ. 6114(JSR).**

United States District Court, S.D. New York.

April 12, 2007.

Gregory Lee Curtner, Kimberly K. Kefalas, Miller, Canfield, Paddock and Stone, P.L.L.C., New York, NY, Frederick R. Juckniess, Kimberly L. Scott, Robert J. Wierenga, Miller Canfield Paddock & Stone, Ann Arbor, MI, for Plaintiff.

Eric Weinstein, David John Galalis, Feldman Weinstein, LLP, Edward Henry Rosenthal, Frankfurt Kurnit Klein & Selz, P.C., New York, NY, for Defendants.

## MEMORANDUM

RAKOFF, District Judge.

In connection with summary judgment motion practice, plaintiff submitted an exhibit containing an email dated February 4, 2006 from defendant Laura Albert's mother to an attorney. *See* Declaration II of Gregory Curtner dated January 24, 2007, Ex. A ("Albert Email"). Plaintiff asserted that "[d]efendants cannot claim attorney-client privilege with regards to [the Albert Email] due to the crime-fraud exception." Plaintiff's Local Rule 56.1(b) Counter–Statement of Material Facts dated January 10, 2007, at 26 n. 4. Defendants Underdogs, Inc. ("Underdogs") and Albert asserted that the crime-fraud exception did not apply to the Albert Email, that the email had been inadvertently produced, and that the document remained privileged and should be returned. *See* transcript, 2/12/07 ("Tr."), at 19–25. The Court received letter briefs from the parties, and, by Order dated February 21, 2007, held that the Albert Email was not protected by either the attorney-client privilege or the attorney work product privilege. This Memorandum states the reasons for that ruling.

By way of brief background, plaintiff's First Amended Complaint alleges that defendants Underdogs, Albert, and Judi Farkas defrauded plaintiff by representing, during the negotiation of a film option on a novel, that an individual named "J.T. LeRoy" wrote the novel, when, in fact, Laura Albert wrote the novel and J.T. LeRoy did not exist. *See generally Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F.Supp.2d 394 (S.D.N.Y.2006).

The document at issue here is an email sent from Carolyn Albert—who is not named as a defendant herself, but who is (according to the email) defendant Laura Albert's mother—to an attorney named Jerold L. Coutoure. *See* Albert Email at 1. The email begins by stating that "I want to establish that you are being hired to represent the legal entity, Underdogs, Inc." in connection with "the rights to the two books by J.T. LeRoy." *Id.* The email notes that "[t]he agent for the properties is: Judi Farkas Management," and that "[m]y daughter is Laura." *Id.* Without giving any further relevant context, the email states:

According to Ms. Farkas, here's what she needs:

1. Laura has to sign a paper disavowing any claim to copyrights held by Underdogs, Inc.

2. Underdogs, Inc. has to have an annual meeting, in which the minutes clearly show that J.T. LeRoy is authorized to sign on behalf of the corporation. This is the tricky part that I don't really understand.

Okay, actually, most of this doesn't make a lot of sense to me. What makes more sense to me is this:

First, be very clear that Laura never has been and cannot ever be an officer of Underdogs, Inc.

Second, Laura does sign a document giving up all rights to any material past, present or future published under the nom-de-plume "J.T. LeRoy" as well as to all copyrights to such material.

*Third, the corporation must show in the minutes of its annual meeting (backdated, if necessary) that J.T. LeRoy is an authorized signatory for contracts.*

*Id.* at 1–2 (emphasis added).

 The attorney-client privilege "protects [c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance," *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991,* 959 F.2d 1158, 1165 (2d Cir.1992), but "[t]he crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct," *In re John Doe, Inc.,* 13 F.3d 633, 636 (2d Cir.1994). The party seeking to overcome the privilege based on the crime-fraud exception must show that "a prudent person [would] have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir.1984).

 In the instant case, although the Albert Email contains material that would be subject to the attorney-client privilege,[1] the email fits squarely within the crime-fraud exception. By writing to Underdogs' attorney that Underdogs must somehow "show in the minutes of its annual meeting (*backdated, if necessary* ) that J.T. LeRoy is an authorized signatory for contracts," Albert Email at 2 (emphasis added), Carolyn Albert effectively asked the attorney for assistance in procuring fraudulent corporate documents. Accordingly, the email would provide a prudent person with a reasonable basis for suspecting the attempted perpetration of a fraud, and the email itself is plainly in furtherance of the attempted fraud.

Underdogs and Albert respond that the Albert Email does not fit within the crime-fraud exception because the fraud suggested by the email, if any, is not the same fraud as that alleged by plaintiff's First Amended Complaint. In a letter dated February 14, 2007, counsel for Underdogs and Albert purports to summarize the pertinent legal principle as follows:

The issue is not whether the email in question was related or relevant to *any* possible crime or fraud, but was 'itself in furtherance of *the* crime or fraud' alleged. *United States v. Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir.1995) (emphasis supplied).

Letter of Eric Weinstein dated February 14, 2007 ("Weinstein Letter"), at 1 (emphases in Weinstein Letter). This is not only inaccurate but also itself amounts to sleight-of-hand, for in the original text of *Roe,* the emphasis is on the word "itself," rather than on the word "the," as in the Weinstein Letter. *See Roe,* 68 F.3d at 40. This makes all the difference, for when properly transcribed, the language from *Roe* simply serves to distinguish between a document that is merely relevant evidence of some fraud, which would not be subject to the crime-fraud exception, and a document that is "itself" in furtherance of some fraud, which would be subject to the exception. *See id.* ("[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud.... Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.") (emphasis in *Roe* ).

 Thus, contrary to the gloss defendants place on their misquotation, *Roe* does not suggest, in the quoted language or elsewhere, that the crime-fraud exception applies only where the fraud furthered by the document in question is "the" crime or fraud asserted by the complaint at hand. *Roe* requires only that "a party seeking to invoke

---

1. The Albert Email does not contain any material subject to the attorney work product privilege, which "protects work product of the lawyer by prohibiting unwarranted inquiries into the files

and the mental impressions of an attorney." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991,* 959 F.2d at 1166 (internal quotation marks omitted).

the crime-fraud exception ... demonstrate that there is probable cause to believe that *a* crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *Id.* (emphasis added).

Accordingly, the Court, in its Order of February 21, 2007, found the Albert Email not protected by either the attorney-client privilege or the attorney work product privilege.